IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MELOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25 C 8105 |
| | ) | |
| SCOTTSDALE INSURANCE COMPANY, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Melock sued multiple insurance companies in state court seeking a declaratory judgment that they have a duty to defend, pay defense costs, and indemnify the City of Waukegan and other individuals in a lawsuit he filed against them, which is pending before another judge in this district. In that lawsuit, Melock alleges police and prosecutorial misconduct as well as harm from hazardous prison conditions. Hartford Casualty Insurance Company, one of the insurers that Melock sued in the present case, removed this case to federal court based on claimed diversity of citizenship. Melock has moved to remand the case to state court, contending that Hartford failed to establish complete diversity.

### Background

On July 10, 2025, Melock filed his complaint in state court against the defendant insurers seeking a declaratory judgment that they have a duty to defend, pay defense costs, and indemnify the City of Waukegan and other individuals in his separate federal

lawsuit. On July 16, 2025, Hartford removed the present case to federal court. The next day, Melock moved to remand the case, arguing that Hartford failed to establish complete diversity.

In his state court complaint, Melock named as defendants, among others, "Certain Underwriters at Lloyd's, London consisting of Lloyd's, London Underwriting Members in Syndicates 210, 122, 529, 14, 212, 947, 546, 205, 1051, 322, 602, 1034, 362, 164, 79, 209." Melock did not affirmatively allege the citizenship of every member of these Lloyd's underwriter syndicates (Underwriters).

After Melock moved to remand, Hartford sought jurisdictional discovery to determine if all of the members of the Underwriters are diverse from Melock. After hearing oral argument on August 22, 2025, the Court allowed jurisdictional discovery, to be completed within forty-five days. On October 17, 2025, the Court extended the jurisdictional discovery period another thirty days, to November 17, 2025, so that Hartford could obtain additional information about the status of an outstanding request for records made to the Society of Lloyd's in London. On November 17, 2025, Hartford notified the Court that the Society of Lloyd's estimated a response to the request would not be issued for three to six more months. On November 24, 2025, the Court decided to change course and ordered Hartford to show cause why the case should not be remanded to state court.

## Discussion

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal district court if the district court would have had original jurisdiction over the case. Federal jurisdiction exists under 28 U.S.C. § 1332 if the amount in

controversy exceeds $75,000, exclusive of interest and costs, and the parties are of diverse citizenship.

"The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *see also Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824-25 (7th Cir. 2013) ("The removing defendant has the burden of proving the jurisdictional predicates for removal."). And "the removing party must establish any disputed aspect of diversity jurisdiction by offering 'evidence which proves to a reasonable probability that jurisdiction exists.'" *Smith v. Am. Gen. Life & Acc. Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003) (quoting *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)). "If at any time . . . it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Hartford asserts two primary arguments in support of removal: (1) the Underwriters' members are fictitious defendants and, as such, must be disregarded for purposes of determining whether the Court has jurisdiction, and (2) Melock fraudulently joined the Underwriters. Before getting to these issues, the Court will address the general jurisdictional concerns presented when a plaintiff names Lloyd's of London syndicates as defendants.

**A.    Lloyd's of London**

To begin, it is helpful to briefly review the general structure of Lloyd's of London. "The structure of the insurance underwriting entity commonly referred to as Lloyd's of

3

London is arachnoid.  Originating in the late 17th century in a London coffee house run by Edward Lloyd where ship owners, captains, and insurance underwriters gathered to buy and sell marine insurance, Lloyd's is a 'self-regulated' insurance market . . . funded by its members[.]"    *Montgomery v. Markel Int'l. Ins. Co. Ltd.*, 259 F. Supp. 3d 857, 863 (N.D. Ill. 2017).  "Syndicates" are unincorporated associations that are the primary actors operating in the Lloyd's market.  *Id.*  "A syndicate that underwrites insurance through the exchange at Lloyd's can have hundreds of members (known as 'names'), located throughout the world, and any given policy is underwritten by multiple syndicates."  *Ind. Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 316 (7th Cir. 1998).  Each of the members of a syndicate "faces unlimited personal liability, like a partner in a general partnership."  *Id.*  "Syndicates are run, however, much like limited partnerships, with a lead member (the 'active underwriter' or 'managing agent') able to transact business without consulting the investors."  *Id.*  Adding to the complexity of this structure, a member of the syndicate may be a limited partnership that, in turn, has its own additional members.  *See Intra Am. Metals, Inc. v. Certain Underwriters at Lloyd's London*, No. 13 C 1117, 2014 WL 545899, at *3 (S.D. Ind. Feb. 7, 2014).

     In *Indiana Gas*, the Seventh Circuit unequivocally held that "underwriting syndicates at Lloyd's of London must be treated like limited partnerships for purposes of determining their citizenship when jurisdiction depends on 28 U.S.C. § 1332."  *Ind. Gas Co.*, 141 F.3d at 319.  "General partnerships, limited partnerships, joint stock companies, and unincorporated membership associations all are treated as citizens of every state of which any partner or member is a citizen."  *Id.* at 317.  Thus, because the syndicates are treated as partnerships, they "have the citizenship of every [member]."

4

*Id.*; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) ("diversity jurisdiction in a suit by or against the entity depends on the citizenship of all of the members . . . ") (internal citations omitted).

The Seventh Circuit has not addressed whether a party that invokes federal jurisdiction must affirmatively allege the citizenship of each individual member of a Lloyd's of London syndicate. Former judge Ruben Castillo, however, comprehensively reviewed the relevant case law on the issue in 2017. *See Montgomery,* 259 F. Supp. 3d at 865–66. Judge Castillo reasoned that a party invoking federal jurisdiction must "specifically allege the citizenship of every Name in a Lloyd's underwriting syndicate" because this requirement "is the only way for a court to satisfy its paramount obligation to ensure subject-matter jurisdiction is proper under § 1332." *Id.* at 868. The Court agrees with Judge Castillo's analysis and conclusion.

Hartford's notice of removal alleges that "Certain Underwriters at Lloyd's of London is a foreign, London, England-based Lloyd's insurer" and "the citizenship of the relevant defendant Insurers is England." Def.'s Notice of Removal at ¶¶ 3, 11. The truth of the matter, however, is that Hartford had, and has, no idea of who the syndicates' members are, let alone the citizenship of each of them. If that weren't an obvious point, it's demonstrated by the fact that when called on this via Melock's motion to remand, Hartford asked for, and thus needed, discovery to learn the syndicate members' identity and citizenship.

Hartford also contends that the Underwriters admitted in another lawsuit that their principal places of business are in London, England. But that does not fully capture citizenship for jurisdictional purposes. There is more to it than a party's principal place

5

of business, and indeed if the party is a partnership, limited liability company, or an individual (any of which is possible for one or more syndicate members), the principal place of business does not even matter.

Finally, as the Court has discussed, to establish diversity of citizenship, Hartford must affirmatively allege the citizenship of every member of the sixteen syndicates named as defendants.[1] It did not do that. In retrospect, the Court erred when, in August, it allowed Hartford to conduct jurisdictional discovery to ascertain facts that it needed to show at the time of removal. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (per curiam) (explaining that the party invoking federal jurisdiction "had to establish that all elements of jurisdiction" "existed at the time of removal").

For these reasons, this Court lacks jurisdiction, and the case must be remanded.

**B.    Fictitious defendants**

As indicated, the Court granted Hartford's request for limited discovery so it could seek the information it needed to establish complete diversity. Hartford's response to the Court's order to show cause recognizes that it has not obtained any information about the citizenship of the Underwriters' members. Hartford now argues that the Underwriters' members are "fictitious parties" whose citizenship the Court should

---

[1] In a reply filed on December 24, 2025, Hartford argues that the parties and the Court should require the Underwriters' counsel to identify the citizenship of the syndicates' members. Hartford bases this argument on the ABA Model Rules of Professional Conduct that govern the attorney-client relationship. The syndicates operate like a limited partnership with a lead underwriter. That lead underwriter, or a similar representative party, presumably would be the client contact for counsel. Counsel would not have contact with each member of the syndicates. More importantly, however, Hartford's argument attempts to shift its burden to the Underwriters. Hartford was required to establish that diversity existed at the time of removal. It has not done so.

disregard when determining whether the case was properly removed.

The removal statute states: "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Thus "naming a John Doe defendant will not defeat the named defendants' right to remove a diversity case if their citizenship is diverse from that of the plaintiffs." *Howell v. Trib. Ent. Co.*, 106 F.3d 215, 218 (7th Cir. 1997).

Hartford acknowledges that a "fictitious defendant" is a party "whom the plaintiff knows to exist, or believes to exist, but can't identify." Def.'s Resp. to Order to Show Cause, dkt. no. 119, at 4 (quoting 28 U.S.C. § 1441(b)(1) (Official Commentary to the 1988 and 1990 Revisions)). In other words, a fictitious defendant is an *unknown* potential party to the lawsuit. Because the party's identity is unknown, the plaintiff includes "John Doe" or "unknown agent" (or some similar identifier) as a placeholder so he may later substitute the correct party. *Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). Hartford argues that the Underwriters "fall squarely within that category" because "the complaint fails to identify any of the individual Names" in the syndicates. Def.'s Resp. to Order to Show Cause, dkt. no. 119, at 4. Thus, according to Hartford, the Underwriters' members are unidentified and currently unknown, so they are fictitious defendants.

This argument lacks merit. The situation here is no different from one in which, for example, a party removes to federal court, based on purported diversity, a lawsuit in which one of the parties is a partnership or a limited liability company. The opposing party in such a case may not know—in fact likely does not know—the identities of the

7

partners or LLC members whose citizenship must be considered in determining diversity.  Nor are those partners or members likely to be individually liable on any claims or counterclaims.  But that does not make them "fictitious" parties within the meaning of section 1441(b) for purposes of determining jurisdiction  .  Similarly in this case, the Underwriters, and their members, are not placeholders for unknown parties.  They are known entities:  "Syndicates 210, 122, 529, 14, 212, 947, 546, 205, 1051, 322, 602, 1034, 362, 164, 79, 209."  Comp. ¶ 2.  The Underwriters are known parties, not "fictitious names."[2]

    Hartford also contends that *Indiana Gas* is distinguishable because that case was filed in, not removed to, federal court.[3]  As its only support for this argument, Hartford points to the removal statute's direction to disregard fictitious names when determining whether a civil action is removal.  But Hartford has the burden of establishing federal jurisdiction; the same burden it would face if it filed the complaint in federal court.  *Schur,* 577 F.3d at 758.  It is true that section 1441(b) permits removal of an action that may not be directly filed in federal court.  See 28 U.S.C. § 1441(b)(1).  The official commentary to the amendment adding this exception noted:  "The remedy that Congress adopted is an amendment that solves the named defendants' problem— *for the moment*—by permitting them to exclude the unknown defendant from a citizenship measure in determining removability." 28 U.S.C. § 1441(b)(1) (Official

---

[2] The Underwriters raise a new issue in their December 22, 2025 filing, made after briefing had concluded:  whether the jurisdictional amount in controversy is met.  Because Hartford has failed to establish diversity of citizenship, the Court need not address this new argument.

[3] Hartford also argues that *Montgomery* is not controlling in this case because it did not involve removal.  *Montgomery* is a district court opinion and is therefore not controlling authority.  As discussed, however, the Court finds its rationale compelling.

Commentary to the 1988 and 1990 Revisions) (emphasis added). The commentary goes on to recognize that the problem may return later because, once a defendant becomes known, the case may be remanded for want of federal jurisdiction. *Id.* In other words, section 1441(b) permits disregarding the citizenship of a fictitious defendant for purposes of removal. But as soon as an actual defendant is substituted for the fictitious name, the case is subject to remand if the known party is not of diverse citizenship. Thus the fact that Hartford removed this case does not make *Indiana Gas* inapplicable or distinguishable; the Court must consider the citizenship of all members of the Underwriters when evaluating whether complete diversity exists. *Ind. Gas Co.*, 141 F.3d at 316.

Hartford also argues that Melock sued the Underwriters knowing that the identity and citizenship of the names were unknown to him and not readily ascertainable. Hartford contends that "[a]ccepting this strategy would allow any plaintiff to evade removal simply by suing 'Certain Underwriters at Lloyd's of London' or any other 'Doe' defendant without identifying the actual participants." Def.'s Resp. to Order to Show Cause, dkt. no. 119, at 7. This argument again ignores that Melock did not simply name an unknown defendant. Rather, he named sixteen specific Lloyd's syndicates. Naming the syndicates is similar to naming a partnership as a party but not the individual partners. *See Ind. Gas Co.*, 141 F.3d at 316. For example, a plaintiff may name a law firm in a legal malpractice suit. If that firm is a partnership, the Court would be required to look to the citizenship of each partner to determine if there is complete diversity. But that does not mean the plaintiff has to list each individual partner as a defendant.

Furthermore, Melock filed his complaint in state court, where (of course) diversity

of citizenship was not required. Thus there was no reason for Melock to establish, or even know, the citizenship of each member of the Underwriters. Hartford, however, must establish diversity of citizenship because it is the party that invoked federal jurisdiction. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

Hartford argues that "[j]ursidictional discovery has now confirmed that the Names likely cannot, and will not, be identified." Def.'s Resp. to Order to Show Cause, dkt. no. 119, at 10–11. But as the Court has indicated, that does not make them "fictitious" for purposes of section 1441(b), nor does what Hartford evidently perceives as unfairness entitle it to invoke federal jurisdiction. The Supreme Court has recognized that its strict requirements that district courts ascertain all of an unincorporated entity's members to determine diversity jurisdiction "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." *Carden*, 494 U.S. at 196. But that does not authorize bypassing these requirements in a case where the citizenship of the underlying members is particularly difficult to discover. The Seventh Circuit has repeatedly "remind[ed] the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care." *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991). Thus, even when it may be impossible to determine the citizenship of a relevant party, the Court's duty to ensure jurisdiction exists remains "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998); *see also McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) (explaining that the Court's "first duty in every lawsuit" is to "[e]nsur[e] the existence of subject-matter jurisdiction").

In short, the exception in section 1441(b)(1) that Hartford invokes does not apply here. Section 1441(b)(1) therefore does not alter the Court's conclusion that Hartford has not met its burden to establish complete diversity.

## C. Fraudulent joinder

Finally, Hartford argues that this Court has jurisdiction because the Underwriters were fraudulently joined. A defendant is fraudulently joined, and its citizenship is disregarded for diversity purposes, if the plaintiff has no reasonable chance of success against the defendant. *See, e .g., Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Hartford bears "a heavy burden" to establish fraudulent joinder. *Id.* If there is "any reasonable possibility that a state court would rule against the non-diverse defendant," it is not fraudulently joined. *Id.*

Hartford contends that the duty to indemnify is not ripe under Illinois law because the underlying lawsuit has not been resolved and the Lloyd's policies put the duty to defend on the other insurers, not on the Underwriters. Melock responds that he has, at a minimum, pleaded a colorable coverage claim. The Court agrees with Melock.

To determine whether an insurer has a duty to defend under Illinois law, the Court examines "the underlying complaint and the language of the insurance policy," resolving "[a]ny doubts as to whether particular claims fall within the policy . . . in favor of coverage." *See Nat'l Casualty Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) (applying Illinois law). An insurer may "refuse to defend an action in which, from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage." *Id*.

The Underwriters' policies provide that the insurers agree to indemnify the

11

covered parties "for all sums, including expenses, all as more fully defined by the term ultimate net loss" because of bodily or personal injury. Dkt. no. 1-2, at 248. "Ultimate net loss" is defined, in part, as the total amount the covered parties "become[] obligated to pay by reason of personal injury or property damage claim, either through adjudication or compromise . . . ." *Id.* at 276. "Ultimate net loss" separately includes "expenses for lawyers and investigators and other persons for litigation, settlement, adjustment and investigation of claims or suits which are paid as a consequence of any occurrence covered hereunder." *Id*. The language requiring payment for "expenses for lawyers and investigations and other persons for litigation" does not include the qualifier that the insurer must first "become[] obligated to pay" "through adjudication or compromise."

In the underlying lawsuit, Melock alleges that he sustained bodily injury and mental anguish during the policy periods. *Melock v. City of Waukegan*, No. 24 C 12679 (N.D. Ill. filed Dec. 10, 2024). In this lawsuit, he seeks a declaratory judgment that the insurers have a duty to defend, pay for the defense of, and indemnify the defendants in his underlying lawsuit. Based on Melock's allegations, he has a colorable claim that the Underwriters owe a duty to defend against his claims. *Acuity v. M/I Homes of Chicago, LLC*, 2023 IL 129087, ¶ 31, 234 N.E.3d 97, 105 ("If the policy language is susceptible to more than one reasonable interpretation, it is considered ambiguous and will be construed strictly against the insurer."); *see also Buckley v. County of DuPage,* No. 88 C 1939, 1998 WL 832641, at *6 (N.D. Ill. Nov. 23, 1998) (interpreting similar policy language to include a duty to defend). The Court, of course, does not adjudicate the merits of Melock's claim; that will be for the state court following remand. But he has

pleaded a colorable claim against the Underwriters such that they are not fraudulently joined.

## Conclusion

For these reasons, the Court grants Melock's motion to remand [dkt. 8] and directs the Clerk to remand the case forthwith to the Circuit Court of Cook County. The Court declines to award costs or attorney's fees under 28 U.S.C. § 1447(c). The status hearing set for January 8, 2026 is vacated.

Date: December 31, 2025

_____
MATTHEW F. KENNELLY
United States District Judge